UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIGUEL ANGEL LOPEZ ESTEBAN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN-FACILITY ADMINISTRATOR OF NORTHWEST PROCESSING CENTER, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02548-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Miguel Angel Lopez Esteban's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II

## BACKGROUND

Petitioner is a native and citizen of Mexico, who entered the United States on an unknown date without admission, inspection, or parole. Dkt. # 6 at 1. He is 37 years old and has

resided continuously in the U.S. since 2004. Dkt. # 1-1 at 5; Dkt. # 8-1 at 2; *see also* Dkt. # 1-2 at 20, 47, 49, 50.

On November 9, 2025, Petitioner was encountered by Florida Highway Patrol (FHP) as part of a traffic stop. Dkt. # 6 at 2. After FHP determined Petitioner was unlawfully present in the United States, he was transferred to the custody of U.S. Border Patrol. *Id.* A Border Patrol officer erroneously determined Petitioner was subject to mandatory detention under 8 U.S.C. 1225(b).[1] Dkt. # 8-1 at 4.

Petitioner was processed and transferred to the Krome Processing Center in Miami, Florida, on November 10, 2025; he was transferred to another facility on December 3, 2025; and finally, on December 5, 2025, he was transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington where he remains. *Id.*

On January 13, 2026, Petitioner was served with a Notice to Appear (NTA), charging him as removable under Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), and placing him in removal proceedings. Dkt. # 6 at 2; *see* Dkt. # 8-2.

On February 9, 2026, Petitioner received a bond hearing and the Immigration Judge (IJ) denied bond based on a flight risk fining. Dkt. # 6 at 2. Petitioner did not appeal this order. *Id.*

On May 14, 2026, Petitioner was ordered removed to Mexico and was denied relief from removal. Dkt. # 6 at 2. Petitioner appealed this order and that appeal remains pending. *Id.*

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. §

---

[1] As Respondents now concede, Petitioner is detained subject to 8 U.S.C. 1226(a). Dkt. # 5 at 1, n.2.

2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner says that his detention has become prolonged and possibly indefinite in violation of the Due Process clause of the Fifth Amendment. Dkt. # 1 at 2. He also raises a challenge to his initial detention.[2] *See* Dkt. # 1-1 at 8, 11. Although Petitioner initially raised those challenges under the Fourth Amendment, on reply, Petitioner says "[t]he relevant legal question is not whether detention is authorized in the abstract by a statute, but whether the process used by the agency to impose and prolong the confinement of [Petitioner] complies with the demanding mandates of Fifth Amendment Due Process." Dkt. # 9 at 4-5; *see also* Dkt. # 9 at 1-2, 6-10 (stating Petitioner did not receive "a constitutionally adequate custody evaluation"). Because "[c]ourts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by [incarcerated persons]," the Court provided Respondents an opportunity to respond to the issues raised in Petitioner's traverse.[3] *See* Dkt. # 11. The Court now considers the procedural due process claim as to the process used

[2] Petitioner also brings an unlawful seizure claim under the Fourth Amendment, a claim for deliberate indifference to physical health, and a claim for irreparable harm to a U.S. Citizen under the Fifth Amendment. *See* Dkt. # 1-1 at 2. Because relief is granted based on procedural due process, the Court need not consider these claims or his prolonged detention claim.

[3] In requesting supplemental briefing, the Court initially assumed Petitioner was raising a challenge to the bond hearing itself, *see* Dkt. # 11, but upon a review of the full record it became clear the violation occurred before the bond hearing before the IJ. The Court finds that in providing Respondents leave to submit a supplemental response to the traverse, Respondents were on notice and had an opportunity to respond to the procedural due process claims. This is supported by Respondents' supplemental brief, which applies the *Mathews* factors. *See* Dkt. # 12 at 6-9. Thus, the Court exercises it discretion to consider the claim. *See E-D-S-O- v. Hernandez*, 2026 WL 1067036, at *2 (W.D. Wash. Apr. 20, 2026) (holding "[d]istrict courts have discretion to consider an issue raised for the first time in a party's reply," especially where respondents had an opportunity to respond, the petitioner's briefing independently put respondents on notice, and where "numerous cases in this district challenging similar immigration detention under a procedural due process theory may have likewise put Respondents on notice") (citing *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2001)).

to initially and continually detain Petitioner. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); Dkt. # 11.

A. Procedural Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). While the Ninth Circuit has held that 1226(a)'s procedures facially satisfy due process, the Court also stated:

> In so holding, [it] do[es] not foreclose all as-applied challenges to § 1226(a)'s procedures. "Due process is a flexible concept that varies with the particular situation." *See Yagman*, 852 F.3d [859,] 863 [(9th Cir. 2017)] (quoting *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015)). The government agrees that its position here does not mean detained aliens can never bring as-applied due process challenges to § 1226(a).

*Id.* at 1213-14.

Accordingly, because Petitioner has stated he has not received a "a constitutionally adequate custody evaluation" and has raised questions as to "the process used by the agency to impose and prolong the confinement," the Court considered each *Mathews* factor to determine whether Petitioner's arrest, detention, and custody evaluation comport with constitutional due process requirements. Dkt. # 9 at 1-2, 4-5.

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Petitioner has a liberty interest in being free from detention. *See generally* Dkt. # 1-2; *see also* Dkt. # 12 at 6 (government conceding Petitioner's liberty interest). He has been in the U.S. continuously since 2004 when he was a teenager. Dkt. # 1-2 at 4; Dkt. # 8-1 at 2. Apart from a misdemeanor traffic violation from 2012 that seemingly was never prosecuted, Petitioner has no criminal record. Dkt. # 6 at 1; Dkt. # 1-2 at 9; *see generally* Dkt. ## 6, 8. He lives with his family and has maintained employment in the construction sector to support his family. Dkt. # 1-2 at 6, 34-44, 45-56.

Petitioner has now been detained for about 10 months. Dkt. # 6 at 2. Three months of this detention occurred before Petitioner received a custody determination before a neutral decisionmaker. *See* Dkt. # 6 at 2. In that time, he was moved to three separate detention facilities and now is across the country from his home of 22 years in Florida. Dkt. # 6 at 2-3; Dkt. # 1-2 at 6-8. Petitioner says that he was unable to communicate with his family before leaving and alleges concerning conditions during his transfer from Florida to Washington. *Id*. Finally, Petitioner alleges he suffers from a blocked coronary artery and says he has begun to experience shortness of breath and respiratory difficulty, and that those symptoms and his condition are not being adequately treated. Dkt. # 1-2 at 11.

Respondents say the first *Mathews* factor favors Respondents for two reasons: (1) Petitioner has a "lesser liberty interest than a citizen"; and (2) because of the process he received during his time detained. Dkt. # 12 at 6. First, while the Court agrees that Petitioner's status as a non-citizen and the circumstances by which he was brought into custody may affect his liberty interest, *see Zadvydas*, 533 U.S. at 693, the Court disagrees with the inference that Petitioner's status as a non-citizen can form the sole basis to greatly diminish his liberty interest. To make such a finding would prohibit courts from meaningfully reviewing any non-citizen's Due Process challenge, and that is far beyond what the Constitution or the Supreme Court has contemplated. *Id*. ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also Gongora Poot v. Hernandez, et a*l., 2026 WL 2516690, at *6 (W.D. Wash. Aug. 26, 2026) ("Constitutionally protected interests in liberty are strengthened as noncitizens establish lives in the United States, even without permission from the government to reside here.") (collecting cases). Because Petitioner has

lived in the U.S. for 22 years and built his life and family here, he has a weighty liberty interest in being free from detention, regardless of his status as a non-citizen.

Respondents' second position that his liberty interest was not infringed because he was detained for "only" about three months prior to receiving a bond hearing in accordance with section 1226(a) is unpersuasive. Dkt. # 12 at 6. As discussed below, the process applied to Petitioner ran afoul of section 1226(a), and the statute may not serve as a basis to avoid constitutional review where the Government does not even abide by it. Thus, because Petitioner has a weighty liberty interest, this factor favors Petitioner.

2. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz*, considering section 1226(a), the Ninth Circuit held that "the existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation." *Rodriguez Diaz*, 53 F.4th 1209. In finding for the Government, the Ninth Circuit considered:

> Pursuant to § 1226(a) and its implementing regulations, when ICE initially detained [petitioner], an ICE officer made an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8). This involved evaluating [petitioner]'s likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons." *Id*. [Petitioner] was then able to request a second custody determination before an IJ. *Id*. §§ 236.1(d)(1), 1003.19(b). Within two months, [petitioner] received that bond hearing, at which he was represented by counsel and could present evidence that might bear on the IJ's determination.

*Rodriguez Diaz*, 53 F.4th at 1209. The Ninth Circuit also considered the petitioner's right to appeal to the BIA, bring questions of legal error to a federal court, and seek an additional bond hearing if circumstances materially changed. *Id.* at 1209-10 (also noting the "further procedural

protections on the merits of his applications for relief from removal"). The Ninth Circuit held, "In short, the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" *Id.* at 1210 (citing *Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017)).

Respondents rely on a similar theory, saying that "the statutory framework governing Petitioner's detention provides adequate safeguards to protect against arbitrary deprivation of liberty." Dkt. # 12 at 6-7. But where the record supported both the facial and as-applied findings in *Rodriguez Diaz*, the same is not true here. Respondents' position ignores the record, which illustrates that Petitioner's experience differs from the petitioner in *Rodriguez Diaz*, and that the procedures used did not comply with section 1226(a) and its regulations.

After living in the U.S. for 22 years, Petitioner was encountered during a traffic stop by FHP. Dkt. # 6 at 2. He was then immediately transferred to Border Patrol, who in following federal policy at that time erroneously determined Petitioner was detained under section 1225(b), which does not allow for a custody determination. Dkt. # 8-1 at 4; *see also Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Thus, Border Patrol did not conduct an initial individual custody determination to considered Petitioner's "likelihood of 'appear[ing] for any future proceedings' and potential 'danger to property or persons.'" *Rodriguez Diaz*, 53 F.4th at 1209 (citing 8 C.F.R. § 236.1(c)(8)); *see generally* Dkt. ## 6, 8. Consequently, the Government failed to comply with 8 C.F.R. § 236.1(c)(8).

As courts have held, section 1226(a) requires an individualized custody determination before detention and failure to do so is "in itself [] a violation of [petitioner's] due process rights." *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) ("…section 1226(a) affords [petitioner] an initial custody determination before exercising

discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk"); *Gongora Poot*, 2026 WL 2516690, at *7 (same); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) (same); *Curimilma Quille v. Blanche*, 2026 WL 1453889, *4-5 (E.D.N.Y. May 22, 2026) (same); *Dos Reis v. McShane*, 2026 WL 1746649, *4 (E.D. Pa. June 17, 2026) (same); *see also Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, 2020 WL 7973940 (2d Cir. Oct. 13, 2020) ("Plaintiffs argue, and Defendants do not dispute, that 8 U.S.C. § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"). Consistent with these rulings, the Court finds that Respondents' failure to provide an individual custody determination at the time of Petitioner's arrest and detention violates section 1226(a).

Even if this were not enough to grant habeas relief, the Government's continuous detention of Petitioner without an opportunity to be heard shows a failure to provide any of the "numerous levels of review" that the Ninth Circuit contemplated in *Rodriguez Diaz*, and independently violated Petitioner's right to due process. Petitioner was not afforded a custody determination until February 2, 2026—by which time his liberty interest had been violated for three months. Dkt. # 6 at 2; *see Gongora Poot*, 2026 WL 2516690, at *7 (holding "a later bond hearing does not necessarily cure the initial due process violation"); *see also Lopez Benitez*, 795 F. Supp. 3d at 497 (finding that given "Respondents' failure to conduct any kind of individualized assessment *before* detaining him—any post-deprivation review by an immigration judge would be inadequate") (emphasis in original). Further, seemingly from the record, the burden was placed on Petitioner to seek his bond hearing. A custody determination was not provided until Petitioner sought one by filing a motion. *See* Dkt. # 6 at 2. This differs significantly from the automatic initial custody determination at the time of arrest that the Ninth

Circuit considered in *Rodriguez Diaz* and that section 1226(a) requires. Dkt. # 6 at 2. What is more, because the bond hearing was his initial individualized assessment, Petitioner was never afforded the "second custody determination before an IJ," which reviews the initial custody determination; the regulations of section 1226(a) contemplate, and the Ninth Circuit assumed, a bond hearing before an IJ would serve as the second determination. *Rodriguez Diaz*, 53 F.4th at 1209 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(b)); *see also Gopie v. Lyons*, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance") (citing *Kelly v. Almodovar*, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025)).

Respondents' point that Petitioner was "only" detained for approximately three months prior to his bond hearing is not well taken. Dkt. # 12 at 4, 6; *see Lopez Benitez*, 795 F. Supp. 3d at 493 ("If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk."). Within those three months, Petitioner, who says he suffers from chronic health concerns, had been placed in three separate detention centers and moved thousands of miles from his home and family.[4] Even more, when Petitioner finally received a custody determination, no

---

[4] Petitioner alleges concerning conditions during these transfers, including "depriving [him] of the basic right to use the bathroom, denying [him] access to food and water, and keeping [him] permanently handcuffed under extreme conditions of overcrowding and degrading treatment." Dkt. # 1-2 at 7-8. He alleges stretches of transport would last up to eight continuous hours. *Id.* Regarding Petitioner's health, it is unclear from the record whether he received a medical evaluation prior to arriving at NWIPC. *See* Dkt. # 7 at 2; *see generally* Dkt. # 6, 8. Respondents say that once he was at NWIPC, he did not report any prior medical history or discomfort, and refused a scheduled medical exam. Dkt. # 7 at 2. But while detained, Petitioner was diagnosed by NWIPC medical staff with Tietze syndrome, which is inflammation where the ribs and chest bone connect; he was provided Ibuprofen and received an EKG, which showed normal rhythms. *Id.* at 3. Because the undisputed record sufficiently supports the Court's findings of a procedural due process violation, it need not make a finding as to these allegations.

contemporaneous record was made, and per agency policy only an oral decision was rendered. Dkt. # 13 at 1. This is distinct from the facts the Ninth Circuit considered in *Rodriguez Diaz*, where the petitioner was detained for two months *after* his initial individualized custody determination and where the IJ bond hearing served as a re-determination of custody. *See Rodriguez Diaz*, 53 F.4th at 1209.

Finally, the Court finds it relevant that Petitioner was not served an NTA, charging him as inadmissible and thus beginning his removal proceedings, until January 13, 2026. *See* Dkt. # 8-2. At this time, Petitioner had been detained for two months and moved across the country from his family and home. While this may not resolve the question of custody determination, this failure to provide the "further procedural protections" that the Ninth Circuit contemplated is of consequence and factors into the Court's consideration of Petitioner's procedural protections while he was in custody.

As Respondents say, Petitioner did not seek an appeal to the BIA. Dkt. # 12 at 3. And the Court acknowledges that Petitioner had available to him two levels of review in that he could have pursued an appeal to the BIA, and he could request review by this Court for legal error of the IJ's determination. As to the second, any meaningful review by this Court is hindered by the lack of a contemporaneous record of the bond hearing. Dkt. # 13 at 1; *see Lima Gamez v. Hernandez*, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026) (finding a due process violation in part because "[t]he absence of a contemporaneous record makes it impossible for the reviewing court to determine whether the immigration judge committed legal or constitutional error") *but see W.T.M. v. Bondi*, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (finding "applicable case law 'does not stand for the proposition that a contemporaneous recording is required for all bond hearings'"). This is of even more concern here, as Petitioner's immigration record arguably contains factual errors. *See* Dkt. # 8-1 at 2 (stating Petitioner resided in the U.S.

for over a year). On the facts here, Petitioner's only real opportunity for review rested with the BIA appeal, and this falls short of the "numerous levels of review" the Ninth Circuit contemplates and does not protect against a constitutional violation.

Had the agency complied with section 1226(a) from the beginning, a constitutional violation may not have occurred; but considering the record as a whole, the second factor strongly favors Petitioner.

3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Respondents say they have a "considerable interest in effecting removal orders and efficient immigration enforcement." Dkt. # 12 at 9 (citing *Rodriguez Diaz*, 53 F.4th at 1206) (holding "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'") (alterations in original). That may be, but those legitimate interests "support detention only when the Government connects them to the individual detainee." *Dos Reis v. McShane*, 2026 WL 1746649, *5; *Gongora Poot*, 2026 WL 2516690, at *8 (adopting the reasoning of *Dos Reis*). As detailed above, Petitioner has strong family ties to the United States and, at the time of the bond hearing, did not have a removal

order.[5] Dkt. # 6 at 2. The record is unclear if this was ever considered by the agency when Petitioner was detained.[6] Accordingly, this *Mathews* factor also favors Petitioner.

* * *

In sum, all three *Mathews* factors favor Petitioner. The Government's detention of Petitioner for three months before being afforded an individualized custody determination violates section 1226(a) and Petitioner's right to procedural due process. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

As to the remedy, Petitioner seeks immediate release. Dkt. # 1-1 at 3. Where, as here, a petitioner's detention is "unlawful from its inception" that "typically requires immediate release." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026) (considering re-detention); *see also Kirykovich v. Hernandez*, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original) (considering re-detention). Thus, the Court finds that immediate release is the appropriate remedy to cure the constitutional violation and to hold otherwise "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4;

---

[5] The IJ did not make a dangerousness finding, nor does one seem appropriate from the record. *See* Dkt. # 8-3 at 2.

[6] Because of the Due Process violation at the outset of Petitioner's detention, the Court does not consider if any legal errors occurred at the IJ bond hearing. For the reasons already explained, a full review of the proceedings would be difficult; based on the record before the Court, it seems clear these facts were presented to the IJ, and it is unclear on what basis the IJ found them insufficient to overcome a flight risk finding. *See generally* Dkt. # 14.

*see also Gongora Poot*, 2026 WL 2516690, at *7 (ordering immediate release under similar facts).

## IV
## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained without adequate notice and a hearing, consistent with due process, before an immigration court to determine whether re-detention is appropriate.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 14th day of September, 2026.

John H. Chun
John H. Chun
United States District Judge